HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN O. PETERSEN,

               Plaintiff,

      v.

LEWIS COUNTY and MATTHEW
MCKNIGHT,

               Defendants.

CASE NO. C12-5908 RBL

ORDER GRANTING SUMMARY
JUDGMENT
(DKT. # 24 & #27)

This case is the result of Lewis County Sheriff's Deputy Matthew McKnight shooting

and killing Steven V. Petersen ("Steven") on June 20, 2011.  Steven was suspected of forcibly

attempting to break into an acquaintance's mobile home and was thought to be armed with a

large knife.  When McKnight found and confronted Steven, Steven started to pace back and

forth, refused to take one of his hands out of his pocket, and repeatedly ignored McKnight's

commands to get on the ground.  The brief stand-off came to an end when McKnight shot and

killed Steven because he thought that Steven was charging towards him.  It was discovered after

the shooting that Steven did not actually have a knife when he was killed.

Steven's father, Steven O. Petersen ("Plaintiff"), is the named Plaintiff in this suit as

Steven's estate's personal representative and as guardian of Steven's minor son, L.P.  McKnight

and Lewis County are the Defendants.  Plaintiff claims that McKnight is liable under 42 U.S.C. § 1983 for violating Steven's Fourth Amendment rights by using excessive force and for violating L.P.'s Fourteenth Amendment right to the companionship and society of his father by killing Steven.  Plaintiff has also asserts § 1983 *Monell* claims against Lewis County for McKnight's alleged constitutional violations and negligence claims against both McKnight and the County. Defendants have asserted a counter-claim for malicious prosecution.

Currently before the Court are Defendants' Motion for Summary Judgment (Dkt. #24) and Plaintiff's Motion for Summary Judgment on Defendants' counterclaims (Dkt. #27).  The main issues are whether McKnight violated Steven's Fourth Amendment rights by using excessive force, whether McKnight is entitled to qualified immunity even if he did, and, if McKnight did use excessive force, whether the County is liable for McKnight's transgression.

As explained below, Defendants are entitled to summary judgment even though the reasonableness of McKnight's use-of-force cannot be determined at this stage of the litigation because McKnight is entitled to qualified immunity, and Plaintiff's other claims fail as a matter of law.  Plaintiff is entitled to summary judgment on Defendants' counter-claims because he had a good-faith basis for this lawsuit.

## I.    BACKGROUND[1]

On June 20, 2011, just before 2:00 a.m., Jared Brockman and Anita Mecca called 911 from Mecca's Napavine, WA mobile home because a man was trying to break into the home. Brockman identified the intruder as "Steven Petersen" and described what he thought Steven was wearing.  Steven had apparently been staying at Mecca's mobile home during the weeks prior to

---

[1] The background section is based on all of the evidence submitted to the Court, but it is worth noting that the Plaintiff is unable to dispute much of what happened because Steven was killed and cannot offer his own version of events.

the incident, but Mecca had told him to leave and not to return.  While Mecca and Brockman were on the phone with the dispatcher, Steven tried to kick the door down, beat on Brockman's truck, and stabbed the front door with a knife.  Steven fled from the scene before the police arrived.  An officer who responded to the house confirmed that the suspect had used a large knife to stab the front door.

McKnight was one of the officers to respond to Brockman and Mecca's 911 call. McKnight was told to go to the intersection of 3rd and Vine to help establish a perimeter until a K-9 unit arrived.  While at that intersection, McKnight saw someone in his rearview mirror a few blocks behind him.  McKnight turned his car around and drove closer to investigate.  McKnight shined his spotlight on the individual in the middle of the road.  Because the person closely matched the suspect's description, McKnight believed that he was the suspect.  He was correct.

Believing that Steven was armed with a knife, McKnight informed dispatch that he was "out with one," and then he exited his patrol vehicle.  He stood in the "V" between the open door and the car and made contact with Steven.  When McKnight got out of his car, Steven's right hand was visible, but his left hand was concealed in his sweatshirt pocket.  McKnight identified himself as a police officer and told Steven that he needed to see his hands.

Steven started to pace back and forth in the street and kept his left hand hidden inside of his pocket.  Because Steven did not comply and was acting erratically, McKnight drew his gun. He continued to repeatedly order Steven to show his hands, but Steven continued to ignore his commands.  McKnight ordered Steven to get on the ground, but Steven refused and said, "that ain't going to happen, buddy."  McKnight claims that he saw the muscles in Steven's arm flex and his whole body posture change.  Then, Steven leaned forward and took two steps towards McKnight.  McKnight does not remember how fast Steven moved towards him, but one witness

saw the incident from her front window.  She claims that Steven "rushed forward."  McKnight believed that Steven was going to stab him, so he shot him four times, killing him instantly.  A number of witnesses nearby heard McKnight order Steven to get on the ground and show his hands just before the shots were fired.  Steven was 20-25 feet away from McKnight's patrol car when he was shot.  As it turns out, Steven was unarmed.  He may have been holding his wallet in his right hand, but he did not have anything in his concealed hand, and he did not have a weapon in his possession.  The entire interaction lasted 1 minute and 11 seconds.

## II.   DISCUSSION

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words, "summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at 1220.

### A.   Excessive Force Claim

Plaintiff claims that McKnight used excessive force when he shot and killed Steven.  He contends as a threshold matter that Steven did not pose an immediate threat to McKnight's safety

when he was shot, so deadly force could not have been justified.  He also contends that McKnight unreasonably failed to consider and utilize alternative options short of using deadly force, like calling for backup or warning Steven that he would be shot if he did not halt.

Plaintiff's excessive force claim is analyzed under the Fourth Amendment's prohibition of unreasonable searches and seizures.  Under the Fourth Amendment, a police officer may only use such force as is "objectively reasonable" under all of the circumstances.  *Scott v. Harris,* 550 U.S. 372, 383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).  The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight.  *Deorle v. Rutherford,* 272 F.3d 1272, 1279 (9th Cir.2001) (citing *Graham,* 490 U.S. at 396, 109 S.Ct. 1865).

To determine whether an officer used excessive force, the nature and quality of the intrusion must be weighed against the countervailing governmental interest in the use of force. *Id.*  That evaluation must be based on all of the circumstances known to the officer on the scene. *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).  Important considerations include (1) the severity of the crime or situation that the officer was responding to; (2) whether the plaintiff posed an immediate threat to the safety of the officer or others; (3) whether the plaintiff was actively resisting arrest or attempting to evade arrest by flight; (4) the amount of time and any changing circumstances during which the officer had to determine the type and amount of force that appeared to be necessary; and (5) the availability of alternative methods to subdue the plaintiff.  *Id.*; *Graham v. Connor*, 490 U.S. 386, 397, 109 S.Ct. 1865 (1989).  The most important of the articulated factors, especially when an officer has used deadly force, is whether the plaintiff posed an immediate threat to the safety of the officers or others.  *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (en banc).  The reasonableness of an officer's use of force is highly

fact-dependent, so parties are rarely entitled to summary judgment on the merits of an excessive

force claim.  *Smith*, 394 F.3d at 701.

Plaintiff is unable to dispute that, based on the information available to McKnight at the

time, McKnight reasonably believed that Steven had a large knife.  The fact that Steven did not

actually have a weapon cannot factor into the reasonableness analysis.  But the inquiry is not

over just because Steven was thought to be armed.  "[T]he mere fact that a suspect possesses a

weapon does not justify deadly force," *Haugen v. Brosseau*, 351 F.3d 372, 381 (9th Cir. 2003),

but threatening an officer with a weapon does, *Hayes v. County of San Diego*, 736 F.3d 1223,

1234 (9th Cir. 2013).

The question presented in this case, therefore, is whether a suspect who is armed with a

knife and 20-25 feet away from an officer is an immediate threat to the officer's safety as soon as

he starts "rushing" towards the officer and whether it is reasonable for an officer to use deadly

force in that situation without first warning the suspect that he will be shot if he does not halt.[2]

This is quintessentially a question of fact that cannot be resolved on summary judgment.  A

reasonable jury could conclude that it was unreasonable for McKnight to shoot a man that he

thought was armed with a knife who was still 20-25 feet away, at least without first warning him

that he would be shot.  But a reasonable jury could also conclude that McKnight reasonably

perceived Steven as a threat to his own safety based on all of the circumstances and that he had

---

[2] Plaintiff also argues that McKnight could have called for backup before confronting
Steven as a reasonable alternative to using deadly force.  Notably, Plaintiff does not argue that
McKnight should have called for backup after Steven started to advance towards him and the
need to use force materialized.  Thus, calling for backup was not an *alternative to* using force at
all and McKnight's decision to not call for backup before exiting his vehicle will not be
considered in the reasonableness evaluation.

to react immediately before Steven was close enough to attack.  The Court cannot say as a matter of law whether McKnight's use of force was or was not reasonable.

**B.      Qualified Immunity**

An officer is entitled to qualified immunity unless the right that he or she allegedly violated was "clearly established" at the time of the alleged misconduct.  *Pearson v. Callahan*, 555 U.S. 223, 232, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).  The relevant inquiry is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001).  Thus, even though the Court cannot say as a matter of law whether McKnight's use of force was reasonable, he may nevertheless be entitled to summary judgment if it was not clearly established at the time that his conduct would violate Steven's Fourth Amendment rights.

Plaintiff contends that it would be clear to a reasonable officer that it would not be permissible to shoot an unarmed, unidentified man without warning from 25 feet away who does not pose an immediate threat to the officer.  While that may be true, that is not the question before the Court.  Again, the inquiry must be based on the facts and circumstances known to McKnight at the time.  Most importantly, Steven was suspected of forcibly attempting to break into an occupied mobile home, was thought to be armed with a large knife, and had repeatedly ignored McKnight's commands to show his hands and get down on the ground.  While a jury could conclude that McKnight misjudged the immediateness of the threat that Steven posed to his safety, there was no Supreme Court or circuit precedent at the time that would have given him fair warning that he could not use deadly force without waiting for Steven to advance further.  Plaintiff cites no analogous cases to support his assertion that the law was clearly established such that McKnight was on notice that his conduct would violate Steven's rights.  Accordingly, McKnight is entitled to qualified immunity.

C.      **Municipal Liability**

A municipality cannot be held liable under § 1983 on a theory of respondeat superior. *Monell v. Dept. of Soc. Servs. Of City of N.Y.*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978).  For a local governmental entity to be liable under § 1983, a plaintiff must show that "'action pursuant to official municipal policy' caused [his or her] injury."  *Connick v. Thompson*, __ U.S. __, 131 S.Ct. 1350, 1359 (2011) (quoting *Monell*, 436 U.S. at 691).  In this context, "official policy" includes a government's lawmakers' decisions, its policymaking officials' acts, and practices so persistent and widespread that they constitute standard operating procedure.  *Id.*

A governmental entity's decision not to train its employees in a particular respect may rise to the level of an official governmental policy for *Monell* liability in limited circumstances. *Id.*  To impose § 1983 liability, a municipality's failure to train must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)).  Deliberate indifference is a stringent standard.  *Id.* at 1360.  It requires proof that the municipality disregarded a known or obvious consequence of its action or inaction.  *Id.*  Thus, in this context, a municipality can only be liable for its failure to adequately train its employees if it had actual or constructive notice that its training program would cause its employees to violate citizens' constitutional rights.  Ordinarily, a plaintiff must show a pattern of similar constitutional violations by untrained employees to establish deliberate indifference for purposes of failure to train.  *Id.*

Plaintiff's first *Monell* claim theory is that Lewis County failed to adequately train McKnight.  Specifically, Plaintiff claims that the County failed to train McKnight to provide a verbal warning prior to using deadly force, when feasible, and when to call for backup.  Plaintiff has presented no evidence, however, that the County did not train McKnight to provide verbal

warnings or that his use of force training was otherwise inadequate.  Plaintiff certainly has not presented evidence that shows a pattern of similar constitutional violations, and he has not otherwise established that the County was on notice that its training program would cause one if its employees to violate a citizen's constitutional rights.  Plaintiff's assertion that McKnight was not adequately trained is pure speculation, so his failure-to-train *Monell* claim fails as a matter of law.

Plaintiff's next *Monell* claim theory is that the County's official policy was for officers to not give verbal warnings prior to using deadly force, even when feasible.  This argument is, frankly, absurd.  Plaintiff points to the fact that the County did not have an explicit policy that a verbal warning should be given before using deadly force, when feasible, and the County's conclusion that McKnight did not violate County policy when he shot Steven to reach its ridiculous conclusion.  Just because the County does not have an explicit policy regarding verbal warnings, it does not mean that the County's policy is to not give warnings.  Likewise, just because the County found that McKnight's use of force was acceptable even though he did not give a warning, it does not mean that the County has a policy that warnings should not be given when feasible.  Indeed, Lewis County Sheriff Steve Mansfield testified that it was the County's policy to give warnings before using deadly force, if feasible.  Accordingly, Defendants' motion for summary judgment on Plaintiff's *Monell* claims must be granted.

**D.      14th Amendment Claim**

Plaintiff has also asserted a § 1983 claim on behalf of Steven's minor son.  He claims that McKnight's alleged excessive force violated L.P.'s Fourteenth Amendment right to "companionship and society" of his father.

The Ninth Circuit recognizes the right to a parent or child's companionship and society as a protected liberty interest.  *Curnow ex rel. Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th

Cir. 1991).  To establish an actionable due process violation, a plaintiff must show that the official's conduct that deprived the parent or child of that interest "shocks the conscience." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).  When considering whether excessive force shocks the conscience, if the officer makes a snap judgment because of an escalating situation and does not have time to deliberate, then his conduct can shock the conscience only if "he acts with a purpose to harm unrelated to legitimate law enforcement objectives."  *Id.*

Here, McKnight's decision to shoot Steven was a snap judgment that he made without the luxury of deliberation.  Accordingly, for Plaintiff to have a cognizable Fourteenth Amendment claim, he would have to show that McKnight shot Steven for some illegitimate purpose not related to law enforcement objectives.  There is no evidence that McKnight shot Steven for any purpose other than self-defense.  Indeed, Plaintiff does not claim otherwise.  Plaintiff's Fourteenth Amendment claim thus fails as a matter of law.

**E.      Negligence Claim**

Petersen alleges that McKnight was negligent by "fail[ing] to take reasonable and appropriate steps prior to and during his use of deadly force . . . ."  McKnight argues that Petersen's negligence claims must be dismissed because he is entitled to state law qualified immunity.  It is unnecessary to consider whether McKnight is entitled to qualified immunity under state law, however, because Petersen has not established that McKnight owed a duty to him, individually; he has only alleged that McKnight breached a duty that he owed to the public in general.

In Washington, a plaintiff who sues a public official for negligence must show that "'the duty breached was owed to the injured person as an individual and not merely the breach of an obligation owed to the public in general (i.e., a duty to all is a duty to no one).'"  *Babcock v.*

*Mason Co. Fire Dist. No. 6*, 144 Wash.2d 774, 785, 30 P.3d 1261, 1267 (2001) (quoting *Taylor v. Stevens Co.*, 111 Wash.2d 159, 163, 759 P.2d 447 (1988) (internal citation omitted)).

Regarding the duty element, Petersen alleged in his Complaint:

41.    Defendant McKnight, by virtue of his employment as [sic] law enforcement officer, owed a duty of reasonable and ordinary care to the citizens of Lewis County.  The duty of care owed by McKnight includes, among other things, to not negligently or recklessly undertake official actions that needlessly create the situation to use deadly force against the citizens he is assigned to protect and serve.

42.    Defendant McKnight owed this duty of care to Steven, who was a resident of Lewis County.

Thus, according to Petersen's own allegations, his theory is that McKnight breached a duty that he owed to the public in general.  Because a duty to all is a duty to no one, McKnight is entitled to judgment as a matter of law on Petersen's negligence claim.

### F.    Negligent Training and Supervision Claim

In Washington, plaintiffs have a cause of action for negligent training and supervision against an employer only if the employee acted outside the scope of his or her employment. *LaPlant v. Snohomish County*, 162 Wn. App. 476, 479-80, 271 P.3d 254, 256-57 (2011).  If an employee is negligent within the scope of his or her employment, then the employer can be held liable under the theory of vicarious liability and a claim for negligent training and supervision is not available.  *Id.*  Petersen has alleged, and no one disputes, that Officer McKnight was acting within the course and scope of his employment when he shot and killed Petersen.  Plaintiff's claim against the County for negligent training and supervision is thus barred as a matter of law.

### G.    Malicious Prosecution Counterclaims

Plaintiff seeks summary judgment on Defendants' malicious prosecution counterclaim. In a civil malicious prosecution action, the action itself must be groundless and motivated by malice.  *Gem Trading Co. v. Cudahy Corp.*, 92 Wn.2d, 956, 963 (1979).  Here, although

Defendants are entitled to summary judgment on all of Plaintiff's claims, the action certainly is not groundless.  Accordingly, Plaintiff's are entitled to summary judgment on Defendants' counterclaims.

### III.   CONCLUSION

For the reasons stated above, McKnight is entitled to qualified immunity on Plaintiff's § 1983 excessive force claim and all of Plaintiff's other claims fail as a matter of law. Additionally, Plaintiff is entitled to judgment as a matter of law on Defendants' counterclaims. Accordingly, Defendants' motion for summary judgment on all of Plaintiff's claims (Dkt. #24) and Plaintiff's motion for summary judgment on Defendants' counterclaims (Dkt. # 27) are both **GRANTED**.

Dated this 13th day of February, 2014.

RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE